# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GERRY JOHNS,<br><br>                        Petitioner,<br>  vs.<br><br>LARRY SMALL, Warden, et al.,<br><br>                      Respondents. | Civil No. 10cv0749-MMA (BLM)<br><br>**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE RE: GRANTING MOTION TO DISMISS**<br><br>[ECF No. 13] |

      Petitioner Gerry Johns (hereinafter "Petitioner") is a California prisoner proceeding pro se with a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (ECF No. 1.) Petitioner claims that his federal constitutional rights were violated in connection to a prison disciplinary hearing because he was not allowed to call witnesses and did not have a fair and impartial hearing officer. (Id. at 6-10.)

      Respondent Warden Larry Small (hereinafter "Respondent") has filed a Motion to Dismiss the Petition with an incorporated Memorandum of Points and Authorities in support thereof, and has lodged portions of the state court record. (ECF No. 13.) Respondent argues that this Court lacks jurisdiction to consider Petitioner's claims because there is no federally-protected liberty interest implicated by the disciplinary proceedings, and, alternately, that Petitioner is not entitled to federal habeas relief because the disciplinary proceedings did not affect the fact or duration of his confinement. (Id. at 3-5.)

Petitioner has filed an Opposition to Respondent's Motion along with a Notice of Lodgment of Exhibits. (ECF Nos. 8, 15.) Petitioner argues that his claims are cognizable, and that habeas relief is available, because the denial of his claims by the state court was contrary to, and/or involved an unreasonable application of, clearly established federal law. (ECF No. 15 at 1-6.)

The Court finds, for the following reasons, that Petitioner has not identified a federally-protected liberty interest implicated in or arising from the disciplinary proceedings, and has therefore not alleged a violation of federal due process. Because Petitioner has not alleged that he is in custody in violation of the federal laws, treaties, or Constitution, he has failed to invoke this Court's habeas jurisdiction. Alternately, assuming a federally-protected liberty interest is implicated, Petitioner's failure to identify a federal due process violation arising from the deprivation of such interest requires dismissal of this action. The Court therefore recommends **GRANTING** the Motion to Dismiss and **DISMISSING** the Petition.

## I. Background

Petitioner was convicted of murder on July 10, 1981, in the San Bernardino County Superior Court, and was sentenced to 16 years-to-life in state prison, which included an enhancement for the use of a deadly weapon. (Lodgment No. 1, Abstract of Judgment at 1-2.) On June 30, 2008, while incarcerated at Calipatria State Prison in Imperial, California, Petitioner was involved in an altercation with an inmate named Blair. (Lodgment No. 2, Rules Violation Report at 1.) Correctional Officer Lopez reported that he observed Petitioner and inmate Blair "striking each other with clenched fists in the upper torso area . . . I ordered both inmates to get down with negative results." (Id.) Officer Lopez reported that he sprayed Petitioner in the face with pepper spray, after which Petitioner complied with his order and assumed the prone position. (Id.)

On July 30, 2008, Petitioner was interviewed by Correctional Officer Uribe, the Investigative Employee assigned to investigate the Rules Violation Report that charged Petitioner with mutual combat. (Id. at 3.) Officer Uribe informed Petitioner that his function was to collect information, which included interviewing Petitioner, the reporting officer, and any

1  other witnesses or persons having information about the incident. (Id.) Petitioner provided
2  Officer Uribe with the following statement:

> I was unexpectedly punched in the facial area by Inmate Blair as confirmed via the medical Report of injury and as I stumbled backwards, the only moves I made were to ensure that I wouldn't be subjected to further attack. There is nothing within the Medical reports which support the officers [sic] report that I and Inmate Blair were striking each other with clenched fists in the upper torso area. . . . The body of the officers [sic] report does not comply with CCR 3286 which among other things states the employee who renders the report should, if possible state who was the aggressor, such viable factor [sic] of information would sustain my disposition that I was not the aggressor nor was the incident a Mutual Combat.

(Id.)

Petitioner identified four witnesses he wished to call at his disciplinary hearing, and submitted four written questions for each of those witnesses. (Id. at 3-5.) The witnesses were Inmates Blair and Galbreath, and Correctional Officers White and Gill. (Id.) Petitioner's request to have them present at the hearing was denied as unnecessary based on their written answers to his questions. (Id. at 6-7.) The questions provided by Petitioner were:

> 1. On the date of June 30, 2008 did you observe an incident involving myself (Inmate Johns) and Inmate Blair?
>
> 2. At any time during the incident did you see me striking Inmate Blair with clenched fists in the upper torso area?
>
> 3. Upon your observations of the incident, was it possible to determine who was the aggressor?
>
> 4. Who would you say was the aggressor during the incident?

(Id. at 3-4.)

The Senior Hearing Officer deemed questions three and four "not relevant," and the witnesses were not allowed to answer them. (Id. at 4.) Inmate Blair refused to answer any questions, and Correctional Officer Gill answered each question by stating that he was on vacation that day. (Id. at 4-5.) Correctional Officer White answered yes to the first question and no to the second question. (Id. at 3.) Inmate Galbreath answered yes to the first question and "No, it was more of a dance" to the second question. (Id. at 4.) Petitioner had no additional questions for these witnesses and did not request any additional witnesses. (Lodgment No. 3, Director's Level Appeal Decision at 1.) The Senior Hearing Officer took into account the

written report by Officer Lopez, as well as a statement by Correctional Officer Aguirre who stated: "I observed [Petitioner and inmate Blair] take a fighting stance and begin strike [sic] one another in the head with fists." (Lodgment No. 2, Rules Violation Report at 7.)

Petitioner was found guilty "based on the preponderance of evidence submitted at the hearing," and was assessed 90 days forfeiture of custody credits, 30 days loss of telephone privileges, and 10 days loss of yard privileges. (Id.) Petitioner has submitted a declaration from Inmate Blair, dated the day after the disciplinary hearing, wherein Inmate Blair states that he was not interviewed by Officer Uribe, did not refuse to answer questions, and that if he had been interviewed he would have stated: "I punched [Petitioner] and stayed out of his reach preventing any type of mutual combat." (ECF No. 8 at 30.) Petitioner's appeal through the prison administrative appeals system, which included Inmate Blair's declaration, was denied at every level. (Lodgment No. 3.)

Petitioner filed a habeas petition in the superior court on January 23, 2009, presenting the same claims he presents in his federal habeas petition here, namely, that his constitutional rights were violated because: (1) it was not established that Inmate Blair and Correctional Officer Gill, who did not provide answers to Petitioner's written questions, would have refused to answer the questions had they been called to testify at the hearing; and (2) Petitioner was not provided with an impartial hearing officer as the hearing officer arbitrarily ruled that Petitioner's questions about who was the aggressor were not relevant. (Lodgment No. 4.) That petition was denied in an order filed on April 14, 2009, on the basis that he did not utilize the mandatory petition form. (Lodgment No. 5.) Petitioner filed a habeas petition in the appellate court on May 26, 2009, presenting the same claims, with the additional allegation that it was error to base the finding of guilt solely on the reporting officer's version of the facts. (Lodgment No. 6.) That petition was denied on the merits in an order filed on August 21, 2009. (Lodgment No. 7.) The appellate court found that: (1) Petitioner's request to have the witnesses present was properly denied because the applicable rules provided that witnesses need not be present if they have no relevant or additional testimony; (2) the questions about who was the aggressor were properly deemed irrelevant because such a finding is not mandatory and would in any case not negate the

finding of mutual combat; (3) the hearing officer did not base the finding of guilt solely on the reporting officer's statement, but also took into account Officer Aguirre's statement; and (4) relief was not available in any case because there was "some evidence" within the meaning of Superintendent v. Hill, 472 U.S. 445, 455 (1985) in the record to support the conclusion reached by the disciplinary board. (Lodgment No. 7, In re Johns, No. D055173, Order at 2 (Cal. App. Ct. Aug. 21, 2009).) Petitioner presented the same claims to the state supreme court in a habeas petition filed on September 22, 2009, which was summarily denied on March 18, 2010, without a statement of reasoning. (Lodgment Nos. 8-9.)

## II.  Discussion

Respondent contends that this Court lacks jurisdiction over Petitioner's claims because he "has no federally-protected liberty interest to invoke review of the disciplinary violation." (ECF No. 13 at 3.) Specifically, Respondent argues that Petitioner's temporary loss of telephone and yard privileges did not give rise to a liberty interest because they did not impose an atypical and significant hardship on Petitioner in relation to the ordinary incidents of prison life, and that the loss of custody credits did not impact the duration of his incarceration because it could not extend his maximum term, which is life, could not affect his minimum term, which passed long ago, and its effect on any parole decision is too attenuated to implicate a liberty interest. (Id. at 4-5.) In a related argument, Respondent contends that because there has been no impact on the length of Petitioner's term of incarceration, his claims are not cognizable on federal habeas review, but must be brought in a civil rights Complaint pursuant to 42 U.S.C. § 1983. (Id. at 3.)

### A.  Jurisdiction

Title 28, United States Code, § 2254(a), sets forth the following scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a) (emphasis added). See also Hernandez v. Ylst, 930 F.2d 714, 719 (9th Cir.

1991) ("We have pointed out that the Great Writ is available only where the Constitution or other federal law specifically protects against the alleged unfairness or guarantees the procedural right in state courts.") (internal quotation marks and citation omitted). Thus, to present a cognizable federal habeas corpus claim under § 2254, a state prisoner must allege both that he is in custody pursuant to a "judgment of a State court," and that he is in custody in "violation of the Constitution or laws or treaties of the United States." See 28 U.S.C. § 2254(a).

It is undisputed that Petitioner is in custody pursuant to a state court judgment, so Respondent's jurisdictional argument turns on whether Petitioner has identified a violation of the federal Constitution, laws, or treaties. Petitioner claims that he is in custody in violation of the federal Constitution based on allegations that he was deprived of federal due process in connection to the disciplinary proceedings in that he did not have an impartial decision maker and was denied the right to call witnesses at his hearing. (ECF No. 1 at 6-10.) He also has alleged that he appeared for a parole consideration hearing before the Board of Parole Hearings on October 7, 2009, and, based in part on the disciplinary infraction, was denied parole and had his next parole consideration hearing set for ten years out. (Id. at 7.)

"The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." Bd. of Regents v. Roth, 408 U.S. 564, 569 (1972). State statutes and prison regulations may grant prisoners liberty or property interests sufficient to invoke due process protection. Meachum v. Fano, 427 U.S. 215, 223-27 (1976) (citing Wolff v. McDonnell, 418 U.S. 539, 558 (1974) (noting that "[t]he touchstone of due process is protection of the individual against arbitrary action of government, . . . and the minimum requirements of procedural due process appropriate for the circumstances must be observed.")). In Wolff, for example, the Supreme Court held that the liberty interest arising from prison regulations regarding disciplinary hearings entitle the prisoner to: (1) written notice of the charges at least 24 hours in advance of the hearing; (2) a written statement indicating upon what evidence the fact finders relied and the reasons for the disciplinary action; (3) the opportunity to call witnesses and present documentary evidence when doing so will not be unduly hazardous to institutional safety or correctional goals; and (4) an

impartial fact finder. Wolff, 418 U.S. at 564-71.

In Sandin v. Conner, 515 U.S. 472 (1995), however, the Supreme Court "refocused the test for determining the existence of a liberty interest away from the wording of prison regulations and toward an examination of the hardship caused by the prison's challenged action relative to the 'basic conditions' of life as a prisoner." Mitchell v. Dupnik, 75 F.3d 517, 522 (9th Cir. 1996) (citing Sandin, 515 U.S. at 484). Thus, after Sandin, a state-created liberty interest under the Due Process Clause of the Fourteenth Amendment arises from conditions of confinement only if the prisoner alleges facts which show a change in his confinement that imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," or "will inevitably affect the duration of his sentence." Sandin, 515 U.S. at 484-87; Wilkinson v. Austin, 545 U.S. 209, 223 (2005) ("After Sandin, it is clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves in relation to the ordinary incidents of prison life.") (internal quotation marks and citation omitted).

Petitioner could establish a liberty interest under Sandin if "the State's action will inevitably affect the duration of his sentence." Sandin, 515 U.S. at 487. Petitioner was assessed a loss of 90 days custody credits. However, Petitioner has already served close to 30 years on a 16 years-to-life sentence, and it does not appear that the loss of custody credits could have any direct impact on the length of his incarceration. As Respondent points out, the credits cannot extend his maximum term of life, and could not affect his minimum term which expired long ago. Although Petitioner contends the disciplinary conviction extended his incarceration because it had an adverse affect on his parole eligibility, Sandin specifically rejected such a consideration as "too attenuated to invoke the procedural guarantees of the Due Process Clause." Sandin, 515 U.S. at 487 (noting that "[t]he decision to release a prisoner rests on a myriad of considerations. And, the prisoner is afforded procedural protection at his parole hearing in order to explain the circumstances behind his misconduct record."); see also Gilman v. Schwarzenegger, — F.3d —, 2010 WL 4925439 (9th Cir. Dec. 6, 2010) (holding that a

1  California law which significantly increased the duration between prisoners' parole hearings did
2  not create a significant risk of prolonging prisoners' incarceration because prisoners retained the
3  ability to apply for expedited hearings).

4  To the extent Petitioner relies on the 30 days loss of telephone privileges and 10 days loss
5  of yard privileges, he has not alleged a liberty interest under Sandin because those restrictions
6  are not "the type of atypical, significant deprivation [that] might conceivably create a liberty
7  interest." Sandin, 515 U.S. at 486. Sandin involved a prisoner serving a sentence of 30 years-to-
8  life who was not permitted to call witnesses at his disciplinary hearing, and who was sentenced
9  to 30 days segregation where he had to remain alone in his cell with the exception of 50 minutes
10 per day for exercise and showers, during which he wore leg irons and waist chains. Id. at 475.
11 The short loss of telephone and yard privileges suffered by Petitioner here are not conditions so
12 significant as to create a liberty interest because Petitioner has not alleged that they amount to
13 a "major disruption in his environment" when compared to those shared by prisoners in the
14 general population. Id. at 486; see also Resnick v. Hayes, 213 F.3d 443, 448 (9th Cir. 2000)
15 (holding that a prisoner's placement in the SHU—where recreational opportunities, access to
16 showers, and access to the library were limited—was "within the range of confinement to be
17 normally expected by prison inmates in relation to the ordinary incidents of prison life.")
18 (internal quotations marks and citation omitted).

19 Accordingly, Petitioner has not alleged facts demonstrating that he is in custody in
20 violation of the federal laws, treaties, or Constitution. As such, Petitioner has not invoked this
21 Court's habeas jurisdiction under 28 U.S.C. § 2254, and the Court recommends **GRANTING**
22 Respondent's Motion to Dismiss on this basis.[1]

23 ///

---

[1] The Court has discretion to construe Petitioner's claim as one brought pursuant to 42 U.S.C. § 1983, and therefore retain jurisdiction over this action. See Willwording v. Swenson, 404 U.S. 249, 251 (1971) (holding that district courts have discretion to construe a habeas petition attacking conditions of confinement as a complaint under section 1983 despite deliberate choice by petitioner to proceed on habeas), superceded by statute on other grounds as recognized in Woodford v. Ngo, 548 U.S. 81, 84 (2006). For the reasons discussed below, however, the interests of justice do not support the exercise of such discretion because Petitioner has not stated a claim for a violation of federal due process under either § 2254 or § 1983.

### B.     Failure to State a Due Process Claim

Assuming, *arguendo*, that Petitioner has alleged sufficient facts to demonstrate that a federally-protected liberty interest did arise under Sandin, or that he could amend his Petition to include such allegations, he has nevertheless failed to allege a violation of federal due process in connection to the disciplinary hearing.  There are two steps in analyzing a due process claim: "the first asks whether there exists a liberty or property interest which was been interfered with by the State . . . the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient."  Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989) (citations omitted).  As set forth above, if a federally-protected liberty interest was implicated here, the pre-deprivation process to which Petitioner is entitled includes written notice of the charges, a written statement indicating upon what evidence the decision was based and the reasons for the disciplinary action, the opportunity to call witnesses and present documentary evidence, and an impartial fact finder.  Wolff, 418 U.S. at 564-71.  Petitioner has alleged, both here and in the state courts, that he was deprived of his right to call witnesses and to have a fair and impartial decision maker.  As the state appellate court correctly observed, however, the Senior Hearing Officer comported with the disciplinary hearing rules, and courts will not disturb prison disciplinary action where there is "some evidence" in the record supporting the disciplinary conviction.  (Lodgment No. 7, In re Johns, No. D055173, Order at 2, citing Superintendent v. Hill, 472 U.S. 445, 454-55 (1985).)

The Supreme Court in Hill held that "revocation of good time does not comport with the minimum requirements of procedural due process[] unless the findings of the prison disciplinary board are supported by some evidence in the record."  Hill, 472 U.S. at 454 (internal quotation marks and citation omitted).  No due process violation occurs if "there is any evidence in the record that could support the conclusion reached by the disciplinary board."  Id. at 455-56.  The "some evidence" standard assures that "the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary."  Id. at 457.  The standard is "minimally stringent," and "the court is not to make its own assessment of the credibility of witnesses or reweigh the evidence."  Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987) (citing

Hill, 472 U.S. at 455).

In this case it is clear that the statements of Correctional Officers Lopez and Aguirre provide the requisite "some evidence" supporting the finding of guilt on the charge of mutual combat. Both witnesses stated that they saw Petitioner and Inmate Blair strike each other with their fists. (Lodgment No. 2, Rules Violation Report at 7.) Although Petitioner contends that the medical evidence does not support a finding that either he or Inmate Blair struck each other in the torso, and that the witnesses he was not permitted to call might have provided evidence to support his own version of the incident, the Court is not permitted to reweigh the evidence or make its own assessment of the credibility of the witnesses. Cato, 824 F.3d at 705. Thus, even assuming Petitioner could demonstrate that he was deprived of a federally-protected liberty interest, he has not alleged that the deprivation involved a violation of federal due process, and this action would be subject to dismissal whether it was brought as a habeas petition under 28 U.S.C. § 2254 or as a civil rights complaint pursuant to 42 U.S.C. § 1983. Because it is clear that Petitioner cannot cure this defect with amendment, the Court recommends **DISMISSAL** with prejudice.

### III.    Conclusion and Recommendation

For the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the Court issue an Order: (1) approving and adopting this Report and Recommendation; (2) directing that Respondent's Motion to Dismiss be **GRANTED**; and (3) directing that judgment be entered **DISMISSING** the Petition with prejudice.

**IT IS ORDERED** that no later than **January 14, 2011** any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

///

///

///

///

///

1       **IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **February 4, 2011**. The parties are advised that failure to file objections with the specified time may waive the right to raise those objections on appeal of the Court's order. See Martinez v. Ylst, 951 F.2d 1153, 1156 (9th Cir. 1991); Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998).

      **IT IS SO ORDERED.**

DATED: December 21, 2010

*[signature]*

BARBARA L. MAJOR
United States Magistrate Judge